UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

GINA VERNER :
:
v. : C.A. No. 14-372ML
:
CAROLYN COLVIN :
Commissioner of the Social Security :
Administration :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income benefits ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on August 20, 2014 seeking to reverse the decision of the Commissioner. On May 29, 2015, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 15). On June 30, 2015, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 16). Plaintiff filed a Reply Brief on July 28, 2015. (Document No. 20).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is not substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 16) be DENIED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 15) be GRANTED.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for SSI (Tr. 173-181) and SSDI (Tr. 182-188) on May 27, 2011 alleging disability since February 1, 2008. The applications were denied initially on October 12, 2011 (Tr. 69-77) and on reconsideration on January 31, 2012. (Tr. 90-100). Plaintiff requested an Administrative hearing. On December 31, 2012, a hearing was held before Administrative Law Judge Martha Bower (the "ALJ") at which time Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. (Tr. 36-66). The ALJ issued an unfavorable decision to Plaintiff on January 30, 2013. (Tr. 18-32). The Appeals Council upheld the ALJ's decision on June 16, 2014. (Tr. 1-4). Therefore the ALJ's decision became final. A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ failed to properly weigh the opinion evidence in establishing Plaintiff's residual functional capacity.

The Commissioner disputes Plaintiff's claims and contends that the ALJ's evaluation of the medical opinion evidence is supported by substantial evidence and must be affirmed.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

**IV. THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

**A. Treating Physicians**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion;

(4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B. Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel,

the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner

bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E. Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional

impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1. Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and

laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination

is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

**V. APPLICATION AND ANALYSIS**

Plaintiff was thirty-seven years old on the date of the ALJ's decision. Plaintiff completed the Eleventh Grade and worked in the relevant past as a retail clerk, customer service representative and cashier. (Tr. 81, 86). Plaintiff alleged disability due to depression, anxiety and panic attacks. (Tr. 69).

Plaintiff underwent an intake evaluation with Gateway Healthcare on May 18, 2011. (Tr. 491-95). She stated that she was overwhelmed and that her mother had died two years before but she still could not cope with it. (Tr. 491). Plaintiff reported that her depression had gotten worse since her mother died; she did not like people and did not want to get out of bed. Id. She was diagnosed with depression and post-traumatic stress disorder (PTSD) and assigned a global assessment of functioning (GAF) score of 52 indicative of moderate symptoms or functional limitations. (Tr. 493).

Plaintiff underwent counseling at Gateway with Deborah Byron, LMHP, through July 25, 2011. (Tr. 488). On referral from the State's disability determination service, Plaintiff underwent a consultative psychological examination with Wendy Schwartz, Ph.D. on September 19, 2011. (Tr. 469-475). At this exam, Plaintiff reported that she had always had problems with depression, but that these had worsened with her mother's death. (Tr. 471). She also reported that her best friend had been murdered the year before. Id. She cried daily, had problems with concentration and her motivation was low. Id. She had also been "somewhat anxious" since she was a child but her panic symptoms had worsened since her mother died. Id. Her panic symptoms occurred every other day and were triggered by crowds or knowing she had to leave the house but they also occurred at home. Id.

Plaintiff described spending her days with her daughter and cleaning. (Tr. 472). She did not go out socially, but had two friends with whom she spoke "a couple of times a week." Id. Dr. Schwartz diagnosed panic disorder with agoraphobia and major depressive disorder, recurrent, moderate, and estimated Plaintiff's GAF at 53, again indicative of moderate symptoms. (Tr. 474). Dr. Schwartz further indicated that Plaintiff appeared to be moderately to severely socially impaired in her ability to respond appropriately to work pressures, colleagues and supervisors; Plaintiff "demonstrate[d] limited coping skills to help achieve a better adjustment." Id.

State agency consultant psychologist Michael Slavit, Ph.D., reviewed Plaintiff's records to date and performed a Psychiatric Review Technique assessment on October 11, 2011. (Tr. 72-74). For the period post-dating Plaintiff's DIB insured status, Dr. Slavit assessed moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, with no extended episodes of decompensation. (Tr. 73). For the same period, Dr. Slavit assessed Plaintiff with the mental residual functional capacity (RFC) to understand and remember at least 3-step, concrete instructions; sustaining routine tasks over two-hour intervals of an eight-hour day; and conducting superficial work relations despite being minimally interactive in a work setting. (Tr. 75-76).

Ms. Byron completed a Medical Report and a Supplemental Questionnaire as to Residual Functional Capacity on November 8, 2011. (Tr. 488-490). Ms. Byron suggested that Plaintiff had a severe limitation in her ability to relate to other people and a severe restriction of daily activities, with numerous moderately severe limitations in areas including the abilities to respond appropriately to supervision and to co-workers; respond to customary work pressures including requirements of attendance, punctuality, and maintaining a consistent pace, and perform varied tasks. (Tr. 489-490).

On December 13, 2011, Plaintiff saw Christine Cassell, P.A., for a new office visit. (Tr. 536). In addition to her physical health concerns, Plaintiff stated that she "thinks she may be depressed;" her mother had died two years ago, her best friend had been murdered and she had "a lot of worry." Id. Plaintiff was prescribed Celexa and Xanax for depression and anxiety. (Tr. 537). Plaintiff reported the same concerns on January 13, 2012; Ms. Cassell increased her dosage of Celexa. (Tr. 543-544). On January 25, 2012, a second State agency consultant psychologist, Marsha Hahn, Ph.D., reviewed Plaintiff's updated records and performed a Psychiatric Review Technique assessment. (Tr. 94-95). Dr. Hahn assessed mild restriction of Plaintiff's activities of daily living, with moderate limitations in social functioning and concentration/persistence/pace, and no extended episodes of decompensation. (Tr. 94). Dr. Hahn also assessed Plaintiffs mental RFC, finding her capable of understanding and remembering 3-step, concrete instructions; sustaining work for two-hour blocks throughout an eight-hour day performing routine tasks; and managing superficial work relations. (Tr. 96-98).

Plaintiff underwent an Initial Assessment with Emily Tripp, LCSW of The Providence Center on May 9, 2012. (Tr. 571-578). Plaintiff stated that since she stopped seeing Ms. Byron, "all I do is cry a lot," and that she was "very, very depressed." (Tr. 571). Plaintiff disclosed anxiety dating back to childhood, but stated that her symptoms had been manageable until she found her mother dead two years before and her best friend was murdered. Id. She reported that she was afraid to leave her house, and panicked when she did, and cleaned the house obsessively to mitigate feelings of guilt related to her inability to work. Id. Plaintiff reported suicidal thoughts, but stated that she would not act on them because of her children. (Tr. 576). Ms. Tripp assessed PTSD and panic disorder with agoraphobia, and estimated Plaintiff's GAF at 53, again in the moderate range. (Tr. 577). Ms. Tripp responded "no" to a question on the Initial Assessment form asking: "Does the client have a physical

or mental impairment, excluding substance abuse, which may preclude employment for at least one year?" (Tr. 571).

On May 11, 2012, Plaintiff returned to Ms. Cassell indicating that she was undergoing therapy at The Providence Center; she was taking Celexa and alprazolam with modest effect. (Tr. 553). Plaintiff stated that she was applying for disability due to severe agoraphobia and anxiety. Id. That day, Ms. Cassell completed a Supplemental Questionnaire as to Residual Functional Capacity, indicating moderately severe limitations in Plaintiff's abilities to relate to other people, respond to customary work pressures and perform complex or varied tasks, and a moderately severe constriction of interests. (Tr. 509-510).

Plaintiff saw Sandra Victorino, LMHC, at The Providence Center on June 14, 2012 reporting increased anxiety, panic, intrusive and irrational thoughts, hypervigilance, and avoidance with feelings of inadequacy, guilt, and shame. (Tr. 580). Ms. Victorino completed a Treatment Plan that day, again estimating a GAF of 53, and planning for a six-month course of treatment, at which point it was expected Plaintiff would have "stable mental health, built [a] support system and developed coping skills." (Tr. 582-584).

On June 26, 2012, Plaintiff reported relationship stressors, a major panic attack lasting fifteen minutes, and "small panic attacks daily." (Tr. 587). She was using coping skills of self-talk, breathing, and taking medication as prescribed. Id. On July 19, 2012, Plaintiff reported that things were better; her boyfriend had been arrested and she had been able to get assistance from welfare despite having a panic attack. (Tr. 590). She was living with a cousin, and was on a waiting list for subsidized housing. Id. Plaintiff had run out of her medication and was continuing to experience panic attacks that she attempted to cope with by applying self-talk, breathing, and putting her head between her legs.

Id. On August 16, 2012, Plaintiff reported that she was moving and had put things in storage. (Tr. 593). She felt better and was surprised that she was able to manage without her boyfriend. Id. She was keeping busy, and had agreed to volunteer at her daughter's school. Id. Her anxiety attacks had decreased since her boyfriend was incarcerated. Id.

Plaintiff underwent a psychiatric evaluation at The Providence Center with Dr. Jamil Chaudhry on September 12, 2012. (Tr. 594-595). Plaintiff's description of her symptoms was consistent with her Initial Assessment report. (Tr. 594). Dr. Chaudhry diagnosed major depressive disorder, anxiety disorder, and a rule-out diagnosis of PTSD, and estimated her GAF at 50, just below the moderate range. (Tr. 595). He reinstated her previous prescription for Celexa. Id.

Plaintiff returned to Ms. Victorino on October 10, 2012 reporting increased family stressors and "up and down" mood. (Tr. 597). While sometimes she felt she was doing okay, for the most part she felt that her anxiety was worse. Id. She went to the store when there were fewer people there and took her daughter to school, but otherwise isolated herself. Id.

Plaintiff returned to Dr. Chaudhry on November 14, 2012 reporting continued symptoms of depression and continued anxiety with panic attacks. (Tr. 599). Dr. Chaudhry increased her dosage of Celexa. Id.

On December 4, 2012, Plaintiff told Ms. Victorino that things were "about the same because she is still living with cousin and he has a chaotic household." (Tr. 606). She and her daughter had both been sick, so the past couple of weeks were harder, but they were both feeling better. Id.

On December 26, 2012, Dr. Chaudhry completed a Mental Residual Functional Capacity Assessment form indicating Plaintiff was markedly limited in many areas of mental functioning, including the ability to understand, remember, and carry out detailed instructions; the ability to

maintain a schedule, regular attendance, and punctuality; the ability to complete a normal work day and work week at a consistent pace without symptomatic interruptions or an unreasonable umber and length of rest periods; the ability to respond appropriately to supervisors and get along with coworkers or peers; and the ability to respond appropriately to changes in the work setting. (Tr. 609-610). Dr. Chaudhry also completed a form titled "Supplemental Questions To: Mental Residual Functional Capacity Assessment" suggesting a moderately severe impairment of Plaintiff's ability to relate to other people, and moderately severe limitations in her ability to understand, remember, and carry out instructions; respond appropriately to co-workers and customary work pressures; and perform varied tasks. (Tr. 612-613). Dr. Chaudhry indicated that Plaintiff would not be able to work on a full-time, ongoing basis in the absence of substance abuse. (Tr. 614).

**A. The ALJ's Decision**

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 2, the ALJ found that Plaintiff's depression and anxiety were "severe" impairments within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 24-25). At Step 3, the ALJ did not find that these impairments, either singly or in combination, met or medically equaled any of the Listings. (Tr. 25-26). As to RFC, the ALJ found that Plaintiff is physically able to perform a full range of work but with moderate limitations in concentration and social interactions. (Tr. 26-27). Based on this RFC and testimony from the VE, the ALJ found that Plaintiff was unable to perform her past relevant work as a cashier due to the requirement of frequent social contact but could perform a range of other unskilled factory positions. (Tr. 31). Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 32).

**B. The ALJ's RFC Assessment is Not Supported by Substantial Evidence**

The ALJ concluded that Plaintiff retained the following RFC:

> A full range of work at all exertional levels but with the following nonexertional limitations: the claimant has a moderate limitation in concentration, persistence and pace such that she can understand, remember and carry out 3 step concrete tasks that are not complex, demanding or time pressured, and a moderate limitation in social interactions, requiring an object oriented task with only occasional work related interactions with supervisors, co-workers, and the general public.

(Tr. 26). However, the ALJ's decision does not clearly articulate the basis for this finding. While it is apparent from my independent review of the record that it is based on the October 10, 2011 assessments of Dr. Slavit, a nonexamining psychologist, (Tr. 75-77), the ALJ does not specifically discuss Dr. Slavit's opinion in her decision.

The RFC assessment is also arguably based, at least in part, on the functional limitations assessed by Dr. Schwartz. (Ex. 4F). Dr. Schwartz conducted a consultative psychological examination of Plaintiff on September 19, 2011. Id. While the ALJ generally describes Dr. Schwarz's report in her decision, (Tr. 29), she does not specifically discuss the functional limitations outlined at page 6 of the report. (Tr. 474). In addition, the ALJ provides no indication as to the weight given to Dr. Schwartz's opinions and why. In particular, Dr. Schwartz opined that Plaintiff's "ability to respond appropriately to customary work pressures" was "moderately to severely impaired." Id. Although the ALJ describes Dr. Schwartz as an "impartial medical consultant," she did not include this limitation in her RFC finding and did not explain why she was rejecting it in her decision. This omission is of significance to the outcome of this application since the VE testified that a moderately severe limitation in the ability to deal with customary work pressures would preclude the ability to maintain gainful employment. (Tr. 65). The ALJ should have expressly evaluated this material finding of Dr. Schwartz in her decision.

Finally, the ALJ's heavy reliance on Dr. Slavit's opinions is problematic on this particular record. Dr. Slavit based his opinion on the medical records as of October 11, 2011. Thus, Dr. Slavit did not have the benefit of reviewing approximately twelve months of subsequent records including the records and assessments of Dr. Chaudhry, Plaintiff's treating psychiatrist; Ms. Cassell, a treating physician's assistant; and her therapy sessions at The Providence Center. However, this is only an error if the subsequent medical history is material. See Alcantara v. Astrue, 257 Fed. Appx. 333, 2007 WL 4328148 (1st Cir. Dec. 12, 2007) (per curiam) (nonexamining psychologist's opinion not due significant weight where claimant's condition subsequently deteriorated and thus his opinion was based on "significantly incomplete record"). Here, I find that the record considered by Dr. Slavit was significantly or materially incomplete for two primary reasons. First, the subsequent treatment records do reflect material charges in Plaintiff's condition and episodic deteriorations. Second, Plaintiff's treating psychiatrist subsequently opined that Plaintiff had a moderately severe limitation in her ability to respond to customary work pressures. (Tr. 613). As previously discussed, this limitation is consistent with the earlier opinion of Dr. Schwartz and is not discussed by the ALJ in her decision. Further, it is material since the VE testified that such a limitation would preclude gainful employment. (Tr. 65).

## VI. CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 16) be DENIED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 15) be GRANTED. Further, I recommend that Final Judgment enter in favor of Plaintiff remanding this matter for further administrative proceedings consistent with this decision.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
August 12, 2015